IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Jefferson Pinzon, aka Kevin Ismael Miranda, | : | |
| | : | Civil Action 2:09-cr-00112 |
| Petitioner | : | Judge Frost |
| v. | : | Magistrate Judge Abel |
| United States of America, | : | |
| Respondent | : | |
| | : | |

# Report and Recommendation

Petitioner Jefferson Pinzon, a federal prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2255. This matter is before the Magistrate Judge on petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody (doc. 10).

## I. Facts and Procedural History

On April 1, 2009, three of Pinzon's co-conspirators boarded separate flights in Long Beach and Los Angeles, California and in Denver, Colorado to Columbus, Ohio. Another co-conspirator rented a vehicle at the Chicago O'Hare airport and drove the vehicle to Columbus, Ohio. On April 3, 2009, Pinzon and a co-conspirator rented two hotels at the Baymont Inn & Suites. Pinzon and his co-conspirators traveled to Columbus for the sole purpose of robbing Frank Simpson of a valuable jewelry inventory.

1

Simpson was in Columbus to sell his jewelry at an equestrian show at the Ohio State Fairgrounds. Simpson and his family, mobile jewelry merchants, traveled throughout the United States to sell their jewelry inventory at events and conventions. On this trip, Simpson was accompanied by his wife and daughter.

After leaving the equestrian show, Simpson placed his jewelry inventory into two large suitcases and one smaller one. He placed the suitcases in the back of his vehicle. Simpson and his family stopped at a restaurant in Westerville. His family entered the restaurant, and Simpson remained in the vehicle. Shortly thereafter, Simpson's car was surrounded by several of Pinzon's co-conspirators, who simultaneously smashed in the driver side and rear window. One of the co-conspirators entered the vehicle and restrained Simpson and jabbed an unidentified object into his left side, which Simpson believed was a firearm. When Simpson attempted to move, the man forced him to stop by stating, "No. No. Don't. Don't . . . I'll kill you." The co-conspirators loaded the suitcases into their vehicle and fled.

Pinzon and his five co-conspirators left Columbus. Three days later, they were found and arrested in a hotel room in Wayne, New Jersey. During a search of the hotel room, law enforcement officials recovered Simpson's jewelry . The jewelry was appraised at a value of $3,723,184.00.

On September 4, 2009, petitioner Jefferson Pinzon pled guilty, pursuant to the terms of his negotiated plea agreement, to one count of conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951. Doc. 69. On March 15, 2010, the Court

sentenced Pinzon to 92 months with a supervised release of three years. Doc. 114. Petitioner did not file an appeal.

On March 17, 2011, petitioner file this motion pursuant to 28 U.S.C. § 2255. He asserts that his plea was unknowing and involuntary due to ineffective assistance of counsel; that he was denied the effective assistance of counsel in filing an appeal, at sentencing, and in failing to object to the government's breach of the plea agreement.

## II.    Ineffective Assistance of Counsel

When reviewing the actions of an attorney, the reasonableness of the counsel's performance, from the counsel's perspective at the time of the alleged error, is evaluated in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). A highly deferential standard of review is utilized. *Id*. at 384. In determining whether counsel made serious errors, the standard to which the attorney is held is not that of the most astute counsel, but instead that of reasonably effective assistance. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). To conclude that counsel was ineffective, there must be a showing that the actions of counsel were "not within the range of competence demanded of attorneys in criminal cases." *Snarks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988).

The right to counsel guaranteed by the Sixth Amendment is the right to "effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

3

> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Counsel's performance in a criminal proceeding cannot be viewed ineffective unless "counsel's representation fell below an objective standard of reasonableness." In this regard, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668 (1984).

The defendant must also show that the deficient performance prejudiced the defense so seriously that he was deprived of a fair trial, *Id.* at 687, and that there is a reasonable probability that he would have been acquitted but for the counsel's unprofessional errors. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the previous outcome. *Id.* Lastly, the Court must also consider that there is a strong presumption that defense counsel is competent. *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989).

### A. Petitioner's Plea was Unknowing and Involuntary

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v.*

4

*Henderson*, 411 U.S. 258, 267 (1973). The two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir.1988). In order to obtain relief, a prisoner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884. The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

Petitioner asserts that his plea was unknowing and involuntary due to ineffective assistance of counsel. Pinzon's March 1, 2011 states that his attorney, David Thomas, "encouraged me, multiple times, to pled guilty; he said that it was in my best interest to plead guilty since I would receive a much lighter sentence due to my minor criminal history." Pinzon Aff., ¶ 1, Doc. 135-2, PAGEID # 1322. Specifically, Thomas told Pinzon that if he pleaded guilty his sentence would be in the range of 36-48 months and that "under no circumstances would [he] receive more than 60 months." Pinzon Aff., ¶¶ 3 and 6, Doc. 135-2, PAGEID # 1323. Relying on Thomas's representation that his

sentence would be no greater than 60 months, Pinzon pleaded guilty. Pinzon Aff., ¶ 4, Doc. 135-2, PAGEID # 1323.

David Thomas has submitted an affidavit that asserts that the physical evidence against Pinzon was substantial and that he advised his client that "he would likely receive a lighter sentence through a guilty plea than if he were convicted following a jury trial." David Thomas's April 27, 2011 Affidavit, ¶ 15, Doc. 149-1, PAGEID ## 1429-30. Thomas further states: "I advised Mr. Pinzon to plead guilty in this case because his case was factually and legally indefensible. Mr. Pinzon was in full agreement with this decision and did not express any hesitation in the course of action that was pursued on his behalf. The decision to plead guilty in this case was based on the strength of the evidence against him and the possible consequences of a jury trial, not on an estimated prison sentence." Thomas Aff., ¶ 18, Doc. 149-1, PAGEID ## 1430-31. Thomas acknowledges that although he did give Pinzon an estimated sentencing range, it was based on inaccurate information provided by Pinzon about his criminal history:

> While I provided Mr. Pinzon with an estimated sentencing range, I also informed him that any information that I provided in this regard was an estimate and that the final sentence in his case was within the discretion of the Court. Furthermore, at the time of the entry of his guilty plea, I was not aware of the entirety of Mr. Pinzon's criminal history or the fact that he was on probation at the time of the offense in this case. Mr. Pinzon had been convicted of numerous offenses in the State of California that resulted in a higher-than anticipated criminal history score, some of which were not disclosed to me by the client. Furthermore, his criminal history score was exacerbated by the fact that he was on misdemeanor probation from the State of California at the time of his offense.

Thomas Aff., ¶ 16, Doc. 149-1, PAGEID # 14230.

At the September 3, 2009 change of plea hearing, the Court advised each defendant that based on their guilty pleas, the could each receive up to a 20 year term of imprisonment, a $250,000 fine, a $100 special assessment, and a three year period of supervised release. Pinzon expressly stated that he understood that the Court could impose the maximum punishment. Doc. 122 at 27-28. The Court also advised Pinzon that if the plea of guilty was accepted, the Court cold impose the same penalty as though he had not pled guilty, stood trial, and was convicted by a jury. Pinzon acknowledged his understanding of this as well. Doc. 122 at 31-32. Counsel for the government summarized the plea agreement and the change of plea hearing as follows:

> Each defendant is aware, Your Honor, that the United States Sentencing Guidelines are now advisory. They are aware that the Court has the jurisdiction to impose any sentence within the statutory maximum set forth for the offense to which they have pled guilty
>
> Each defendant is aware that the Court has not yet determined a sentence. The defendants are further aware than any estimate as to the probable sentencing range under the advisory guidelines and the statutory factors under the United States Code that any of them may have received from their counsel, from the United States, or the Probation Office is merely a prediction, is not a promise, and is not binding on the United states, the Probation Department, or, most importantly, this Court.
>
> The United States makes no promise or representation at this time as to what sentence any of the defendants will receive, and the defendants understand that they cannot withdraw their guilty pleas based upon the actual sentence that will be imposed by this Court.

Doc. 122 at 48-49. Pinzon acknowledged that these terms were consistent with his understanding of the plea agreement. *Id.* at 52. Pinzon also acknowledged that no one

had made any other or different promise or assurance of any kind that induced him to plead guilty. *Id.* at 53. Additionally, the Court questioned Pinzon and his co-defendants:

> Do you understand that any recommendation of a sentence agreed to by our counsel and the Government or any agreement by the Government not to oppose the sentence required by your attorney is not binging upon the Court and that you might, on the basis of your guilty plea, receive a more severe sentence than requested or recommended? Do you understand that?

*Id.* at 53-54. The Court further asked:

> Do you understand that if I do impose a more severe sentence, you will still be bound by your plea of guilty, and you will have no right to withdraw that guilty plea? Do you understand that?

*Id.* at 54. Pinzon answered yes to the Court's questions. As a result, the record demonstrates that Pinzon acknowledged, several times, that he clearly understood that he could receive up to a 20 year term of imprisonment and that no promise had been made as to the actual term of imprisonment that Pinzon would receive from the Court.

At the change of plea hearing, Pinzon was informed repeatedly that he could receive the maximum sentence. Pinzon agreed that no promises had been made concerning what his sentence would be and that he understood that it was within the Court's discretion to impose a sentence. When a prisoner challenges his guilty plea on the basis that it was induced by an unkept promise, the court must determine whether the allegation, when viewed against the record of the plea hearing is so palpably incredible, so patently frivolous or false, as to warrant summary dismissal. *Blackledge v. Allison,* 431 U.S. 63, 76 (1977). In applying this standard, the Court will indulge a strong

8

presumption that the statements made by the parties at the plea hearing were truthful. *Id.*, at 74. A prisoner may overcome this presumption only by supporting his claim with specific factual allegations. *Id.*, at 75-76. Pinzon's affidavit here that his plea was induced by his attorney's promise that his sentence would not exceed 60 months is insufficient as a matter of law to overcome his statements under oath and in open court to the contrary.

### B. Counsel Failed to File Notice of Appeal

Petitioner also asserts that he was denied the effective assistance of counsel when his attorney failed to file a notice of appeal as requested. Pinzon's affidavit states: "Immediately after sentencing, I unequivocally told my attorney, David Thomas, to appeal." Pinzon Aff., ¶ 8, Doc. 135-2, PAGEID # 1323. Thomas denies that petitioner ever requested to file an appeal: "Mr. Pinzon did not request that I file an appeal on his behalf. I discussed Mr. Pinzon's case with him at the time of sentencing and several times thereafter and he never advised me of any desire to submit an appeal." Thomas Aff., ¶ 19, Doc. 149-1, PAGEID # 14231.

Failure of an attorney to file a timely appeal upon the defendant's request constitutes ineffective assistance of counsel.

> [E]very Court of Appeals that has addressed the issue has held that a lawyer's failure to appeal a judgment, in disregard of the defendant's request, is ineffective assistance of counsel regardless of whether the appeal would have been successful or not. *See Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir. 1994); *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993); *United States v. Horodner*, 993 F.2d 191, 195 (9th Cir.1993); *Bonneau v. United States*, 961 F.2d 17, 23 (1st Cir.1992); *United States v.*

9

> *Davis*, 929 F.2d 554, 557 (10th Cir.1991); *Williams v. Lockhart*, 849 F.2d 1134, 1137 n. 3 (8th Cir.1988). We agree with those courts and hold that the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment.

*Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir.1998).

> [A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *See Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *cf. Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit"). This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.

*Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).

Where a criminal defendant neither instructs his attorney to file an appeal nor asks that an appeal be taken, the Court must consider whether the attorney consulted with her client regarding the filing of an appeal. If defense counsel consulted with her client regarding the filing of an appeal, she performs in a professionally unreasonable manner only if she fails to follow a defendant's express instructions with respect to an appeal. *Roe v. Flores-Ortega*, 528 U.S. at 478. If counsel has not consulted with her client regarding the filing of an appeal, the Court must consider whether this failure constitutes deficient performance. *Id.*

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant

reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. *See id*., at 690, 104 S. Ct. 2052 (focusing on the totality of the circumstances). Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id*. at 479-80.

Here, the transcript of Petitioner's sentencing hearing indicates petitioner was advised of his right to appeal:

> THE COURT: Mr. Pinzon, you have the right appeal your sentence and conviction. If you cannot afford the costs of an appeal, you may apply to this Court for leave to appeal without payment of fees or costs. The appeal must be filed within ten days of the filing of the entry of judgment. And if you request it, the Clerk of Courts will file a Notice of Appeal in your behalf.
>
> First of all, do you understand that you can apply to this Court for leave to appeal without the payment of fees and costs.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Finally, do you wish to have the Clerk of Courts file that Notice of Appeal?
>
> MR. THOMAS: Can we have a minute, Your Honor?
> (Whereupon, the defendant conferred with his counsel.)
>
> MR. THOMAS: Not at this time, Your Honor.

11

>THE COURT: Thank you.
>
>Mr. Pinzon, if you change yoru mind, you have ten days to file the Notice of Appeal. Contact your attorney of the Clerk's Office through the Marshal's Office. Do you understand?
>
>THE DEFENDANT: Yes.

Doc. 148-at 48-49.

Although Pinzon, after consulting with Thomas, told Judge Frost that he did not want the Clerk of Court to file an appeal on his behalf, he maintains that he instructed Thomas immediately after sentencing to file a notice of appeal. Thomas denies receiving any such instructions. Thus, there is conflicting evidence on the issue.

Although it does appear that Pinzon had no viable grounds for an appeal of his sentence, I cannot say, on the record before me, that his statement under oath that he instructed Thomas to file an appeal is conclusively controverted by other evidence of record or so unworthy of belief that a finder of fact could not conclude by a preponderance that Pinzon instructed Thomas to file a notice of appeal. While the absence of any ground for appeal may be a factor in determining credibility, the law permits a defendant with no grounds for an appeal to instruct his attorney to file one. And it is ineffective assistance of counsel for an attorney so instructed to fail to do so. Consequently, Thomas is entitled to an evidentiary hearing on the issue.

### C. Counsel Failed to have Jewelry Independently Appraised

Pinzon argues that his attorney failed in his duty to make a reasonable investigation or to make a reasonable decision that a particular investigation was

unnecessary by not investigating the value of the items stolen. The value of the items stolen directly impacted his sentence, and his counsel failed to have the items independently appraised. Pinzon maintains that the failure to have the jewelry independently appraised resulted in a 5-point enhancement; he contends that he should have been subject to only a 4-point enhancement based on the victim's appraisal. The victim appraised the value of the jewelry at $1 million, but the government's expert appraised the value at $3.7 million. Thomas argued that he was unable to have the jewelry appraised because it was returned to the victim before he could do so, but Pinzon maintains that his attorney could have had the jewelry appraised prior to its return. His attorney also could have asked the victim how much the jewelry sold for. Petitioner argues that had his counsel performed his duty, there was a reasonable probability that the Court would have concluded that the jewelry was worth no more than was the owner said. His attorney's failure to investigate the matter violated petitioner's Sixth Amendment right and resulted in a higher sentencing range.

Thomas asserts that Pinzon, after full consultation with counsel, made the decision to agree to the early return of the jewelry to the victim to limit his exposure to criminal penalties resulting from greater harm to the victim:

> Mr. Pinzon and I discussed the estimated value of the stolen jewelry in this case and the impact of any possible sentencing range. At a very early stage, Assistant United States Attorney Salvador Dominguez advise me that the victim jeweler sought return of the stolen jewelry. He further advised me that delaying the return could result in substantial, and possibly irreparable, economic harm to the jeweler's business. I researched the legal consequences of returning these items without obtaining an

> appraisal on Mr. Pinzon's behalf. I also discussed this situation fully with
> Mr. Pinzon. I advised Mr. Pinzon, and he agreed, that based on the
> Government's statements it was in Mr. Pinzon's best interests to acquiesce
> in the return of the jewelry before a defense appraisal could be obtained.
> This was a tactical decision intended to mitigate any loss to the victim and
> position Mr. Pinzon favorably with respect to future sentencing.
> Information about this was presented to the Court prior to the sentencing
> by both the Government and the defense.

Thomas Aff., ¶ 20, Doc. 149-1, PAGEID # 14231.

In paragraph 11 of his plea agreement, Pinzon specifically agreed that the loss amount, in terms of the value of the jewelry, was more than $1,500,000 but less than $5,000,000. The agreement specifically stated that the stipulations were binding on the parties but not on the Court. At the sentencing hearing of Pinzon's co-defendants, counsel for the government indicated that he spoke with Pinzon's attorney shortly after he was appointed in an attempt to facilitate the return of the property to the victims to allow them to continue to earn a living. The defense opted to return the properly promptly rather than obtain an appraisal. That was a tactical decision to limit Pinzon's sentencing exposure. In exchange, the government agreed to agree to a loss figure of less than $2.5 million. Petitioner has offered no evidence of the value of the jewelry nor evidence that would suggest that there is a reasonable probability that the Court would have found a lesser loss figure had a second appraisal been performed. Accordingly, I conclude that this claim is without merit.

### D. Counsel Failed to Properly Challenge Death Threat Enhancement

Pinzon also argues that his attorney failed to direct the Court's attention to the fact that the co-defendants accused of making a death threat during the robbery did not speak English, and therefore, could not have made a death threat. Pinzon maintains that had his attorney presented this evidence and argument to the Court at sentencing, there is a reasonable probability that the Court would have sustained this objection.

Plaintiff's argument is without merit. Despite his co-defendants' argument challenging the two-level enhancement for an express threat of death, the Court expressly found that victim's testimony to be credible and that the probation officer had properly applied a two-level enhancement. Pinzon's counsel raised an objection at Pinzon's sentencing hearing, which the Court overruled. The Court was aware that petitioner's co-defendants were not fluent in English, but this fact did not undermine the victim's credibility. Accordingly, I conclude that it lacks merit.

### E. Counsel Failed to Object to the Breach of the Plea Agreement

Pinzon argues that his attorney failed to object to the government's breach of the plea agreement. Pinzon maintains that prior to sentencing, the government promised to seek a downward departure if he provided substantial assistance related to other crimes. Pinzon asserts that he did provide substantial assistance, and acting on information provided by him, government agents recovered a large amount of drug money and arrested at least four individuals. Pinzon maintains that his attorney failed to bring the government's failure to file a motion for downward departure to the attention of the Court.

15

The government maintains that it never contemplated filing a motion for downward departure based on Pinzon's assistance, and the plea agreement made no reference to such a motion. Counsel for the government and Pinzon both brought Pinzon's level of assistance to the attention of the Court at sidebar during his sentencing hearing. During the course of the discussion, counsel for the government noted that the probation officer had recommended a sentence at the higher end of the applicable guideline range and advised the Court to consider an upward departure from the applicable guideline range. Counsel for the government, on the other hand, requested that the Court sentence Pinzon to lower end of the sentencing guideline range. Prior to sentencing Pinzon, the Court stated it considered his level of cooperation in determining his sentence. As a result, the record does not support Pinzon's unsupported allegation that the government breached the plea agreement or that his attorney was ineffective with respect to this matter.

### III. Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that all claims, except the allegation that Petitioner Pinzon instructed his attorney to file a notice of appeal, be **DISMISSED.** Petitioner's request for an evidentiary hearing is **GRANTED** as to his allegation that he instructed his attorney to file a notice of appeal.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof

in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/ Mark R. Abel
United States Magistrate Judge
